IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John F. Oglesby #194567,     ) | |
|       ) | |
|     Plaintiff,     ) | Civil Action No.: 8:19-cv-00016-TMC-JDA |
|       ) | |
| v.     ) | |
|       ) | MEMORANDUM IN SUPPORT OF |
| Sgt. Brown, Ofc. Vanderlinden,     ) | MOTION FOR SUMMARY JUDGMENT |
| Capt. Jones, Capt. Young, Sgt.     ) | ON BEHALF OF DEFENDANTS, |
| Williams, Sgt. Johnson, Sgt. Davis,     ) | WARDEN DENNIS BUSH, SGT. BROWN, |
| Corp. Daniels, Nurse Collins, AW     ) | CAPT. JONES, OFC. VANDERLINDEN, |
| Stephan, Warden Dennis Bush,     ) | CAPT. YOUNG, AW STEPHAN AND |
| Major Ocean,     ) | MAJOR OCEAN |
|       ) | |
|     Defendants.     ) | |
| _____) | |

The Pro Se Plaintiff brings this lawsuit as a civil rights action pursuant to 42 U.S.C. §1983 for deliberate indifference to his health and safety.

At the time of the matters alleged in the Complaint, Plaintiff was an inmate with the South Carolina Department of Corrections (SCDC), a governmental agency, and Defendants, Warden Dennis Bush, Sgt. Brown, Capt. Jones, Ofc. Vanderlinden, Capt. Young, AW Stephan and Major Ocean, were employees of and acting within the scope of their official duties for the SCDC.

Defendants, Sgt. Williams, Sgt. Johnson, Sgt. Davis, Corp. Daniels, and Nurse Collins, were not served with the Summons and Complaint and are not part of this lawsuit.

1

In his 46-page Complaint with 27 pages of attachments, Plaintiff alleges that: Defendants failed to provide him with prompt and proper treatment for post-surgery treatment and medication intake for insulin treatment purposes for a heart ablation and delays and failures to carry out physicians orders; Defendants failed to protect him from physical brutality when 2 officers denied him adequate medical care in following post-surgery recommendations; these officers violated his 8th Amendment right from the use of excessive force; Defendants failed to provide him with procedural due process when he was not given notice of a hearing, the right to call witnesses, assistance in preparing for the hearing, a fair and impartial decision maker, and the right to question witnesses; Defendants failed to provide him with the right to safe and humane living conditions which exposed him to unreasonable risk to serious harm; on October 2, 2017, he started experiencing severe chest pains, shortness of breath, blurry vision and lightheadedness; with the help of 2 inmates, he was escorted to the medical facility; during the initial exam, it was documented that his blood pressure was below normal; he was rushed to Palmetto Hospital; after 13 hours in the waiting room, he was admitted to the heart specialist wing and placed on 2 heart monitors; he was told he needed heart ablation surgery; he was told he was diabetic; he started receiving insulin shots on a daily basis; he was released on October 7, 2017, and sent back to prison; a Nurse Practitioner ordered an EKG; he was examined by a doctor who ordered medications and recommended that if he suffered any complications, he was to report to the medical office immediately; he was to have regular blood sugar checks, blood pressure checks and insulin shots; on October 14, 2017, between 10 am and 5 pm, he went to the medical office with other diabetics;

upon arriving at the medical office, Defendant Officer Vanderlinden would not let him in; he told Defendant Officer Vanderlinden that if he had any complaints, he was to report to the medical office; he stood there with chest pains asking to be seen by a nurse; Defendant Sgt. Brown came to medical in a violent and threatening manner; because his name was not on the pre-dated insulin roster, he was not being allowed medical treatment; Defendant Officer Vanderlinden and Defendant Sgt. Brown said that if he did not go back to the dorm, Defendant Sgt. Brown was going to bust his head and drag him back to the unit; he informed Defendant Sgt. Brown that he needed medical attention and wanted to speak to a supervisor; as he attempted to walk past, Defendant Sgt. Brown hit him in the face with his closed fist, and Defendant Officer Vanderlinden clipped his feet from under him; they threw him on the sidewalk with Defendant Sgt. Brown on top choking him and punching him in the chest and stomach and hollering for him to roll over and put his hands behind him back; after he rolled over, Defendant Sgt. Brown put a knee in the small of his back forcing his face to the sidewalk, as Defendant Officer Vanderlinden was kicking his left shoulder and screaming for Defendant Sgt. Brown to move so he could mace him; he yelled for help and pleaded with them to let him go; he had chest pain and could not breathe; they stopped the attack and went to check about the insulin shot, leaving him on the sidewalk in front of the medical building; inmates on the rec field saw the assault; Defendant Officer Vanderlinden came back, threw his identification card on the ground, told him to go back to the unit, and told him he was not getting any medical attention; he started crawling, stumbling and staggering towards the unit; the officer working the visitation lockdown carried him inside the visitation

shakedown area and laid him on the floor; Sgt. Johnson, Sgt. Williams, Corp. Daniels and Sgt. Davis (named Defendants who were not served with the Complaint) came, and Sgt. Johnson picked him up and laid him on the sidewalk by the operations entrance gate; Defendant Capt. Jones came out and asked him what was wrong; he explained what happened; Defendant Jones and the other 4 officers stood there laughing at him, watched him suffer in pain, and did not attempt to take him to get medical care; Defendant Capt. Jones took his identification card and left with the other officers; Defendant Capt. Jones returned, threw his ID card on the ground out of his reach, and said Nurse Collins (a named Defendant who was not served with the Complaint), Defendant Sgt. Brown, Defendant Capt. Young and Defendant Officer Vanderlinden, said there was nothing wrong with him, and he was not going to get any help; he was only trying to follow his post-surgery recommendations; instead, he was verbally and physically assaulted, laughed at and left for dead; he was denied medical attention for his swollen blood shot eye, bruised shoulder, chest and stomach area, scratches on his face and painful throat and spinal area, caused by the assault by Defendants Sgt. Brown and Officer Vanderlinden; inmates leaving visitation carried him back to his unit; he called his sister to tell her what happened; he was locked in his cell; on October 15, 2017, he asked other officers for help, but he received no medical attention; he was told there was no sick call due to lock-down; on October 16, 2017, he had 3 OTRs to pick up his heart medication, but an officer refused to let him get the medication; on October 17, 2017, he was still trying to get to medical to get the assault and battery documented, but officers would not call the medical office; an officer released other diabetic inmates, but refused

to let him go with them to get his medication; this officer gave another inmate his OTRs and ID card, and this inmate got all of his medications, which is against SCDC policies, rules and regulations; he sent a Request to Staff to Defendant A/W Stephan informing him about the assault and battery and about the post-surgery recommendations, but he did not get a response; on October 20, 2017, he sent Defendant Capt. Young a Request to Staff asking if an incident report was filed and asking for copies, but he did not get a response; on October 24, 2017, he filed a grievance, but it was returned, because he failed to attempt informal resolution, although he had sent out all of the Requests to Staff; from October 26 to November 6, 2017, he repeatedly asked to speak to the Warden, Major or Captains, but he did not get a response; on November 6, 2017, he sent Defendant A/W Stephan another Request to Staff, but did not get a response; on November 3, 2017, he sent Defendant Warden Bush a Request to Staff, but he did not get a response; on November 13, 2017, he sent Defendant Warden Bush a second Request to Staff, but did not get a response; on November 12, 2017, he filed another grievance about a disciplinary hearing where he received a guilty finding by the hearing officer; he believes the guilty finding was in retaliation for the grievance he filed about the incident on October 14, 2017; in November and December 2017, he did not receive any responses to his Requests to Staff; he was never sent to the medical office about his injuries; his assault and battery was never investigated; on January 28, 2018, he sent Defendant Major Ocean 2 Requests to Staff, but he did not get a response; during the months the unit was on lockdown, he repeatedly asked for more Request to Staff forms, but did not get any; on January 31, 2018, he sent Defendant Major Ocean another

Request to Staff, but did not get a response; he never received any answers about the assault and battery, denial of medical care and the disciplinary hearing; Defendant Major Ocean had him write an incident report about everything that happened and he talked to Defendant Major Ocean about it; and on June 6, 2018, he asked another officer to give him information about all of the officers involved in his incident.

Plaintiff further alleges that due to the delays, denials and interference with the recommended treatments and medications for post-surgery heart ablation surgery, he suffered loss of sensations in his left hand and the inability to grip objects with his fingers, a black eye, bruised and painful swollen nose, pain to his shoulder, problems swallowing his food, constant pain to his lower spinal area, pain in his rib cage and stomach, anxiety, loss of sleep, depression, fear of retaliation of another attack as well as retaliation of false charges against him in an effort to stop him from filing grievances and this lawsuit, continuing worries about his health, apprehension about talking to officers for fear of retaliation or denial of medical care, and chronic pain in his shoulder, back, neck and ribs, which affects his walking, standing and sitting,

I.    **PLAINTIFF'S 42 U.S.C. §1983 CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED PURSUANT TO THEIR ELEVENTH AMENDMENT IMMUNITY.**

<u>LAW</u>

The Eleventh Amendment bars suits against a state by citizens of another state or a foreign country and bars suits against a state by citizens of that state. <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89 (1984), <u>cert. denied</u>, 498 U.S. 850 (1990). This immunity from suit conferred on states by the Eleventh Amendment extends

to suits against state agencies, such as the SCDC, and its employees. A suit against state officials in their official capacities is construed as being against the State itself and is barred by the Eleventh Amendment absent consent to suit or waiver of immunity.  Id. at 98-100; see also Jensen v. Conrad, 570 F. Supp. 91, 97 (D.S.C. 1983), aff'd. 747 F.2d 185 (4th Cir. 1984), cert. denied, 470 U.S. 1050 (1985); Coffin v. S. C. Department of Social Services, 562 F. Supp. 579, 584 (D.S.C. 1983).

Although Congress may expressly abrogate a State's Eleventh Amendment immunity pursuant to its enforcement power under the Fourteenth Amendment, the Supreme Court has consistently held that neither a State agency nor a State official in his official capacity is a "person" for purposes of a §1983 damages action.  Will v. Michigan Department of State Police, 109 S. Ct. 2304 (1989).

<u>DISCUSSION</u>

At the time of the matters alleged in the Complaint, Defendants were employees of the SCDC, a governmental agency. Therefore, since Congress in enacting §1983 failed to waive the State's Eleventh Amendment immunity, any claims for damages under this section against Defendants should be barred.

**II.     PLAINTIFF'S 42 U.S.C. §1983 CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES ARE BARRED, BECAUSE PLAINTIFF CANNOT SHOW THAT DEFENDANTS DEPRIVED HIM OF ANY RIGHTS OR PRIVILEGES UNDER THE CONSTITUTION OR FEDERAL LAW OR THAT DEFENDANTS WERE DELIBERATELY INDIFFERENT TO HIS HEALTH OR SAFETY, AND BECAUSE THERE IS NO EVIDENCE THAT SUPPORTS PLAINTIFF'S ALLEGATIONS REGARDING THE USE OF FORCE ON OCTOBER 14, 2017.**

LAW

While neither a State nor a State official in his official capacity is a "person" for purposes of a §1983 damages action, a State official may be sued for damages in his or her individual, as opposed to official, capacity under §1983 for intentional deprivation of constitutional rights under color of state law.  Hafer v. Melo, 112 S. Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991).  To state a claim under §1983, Plaintiff must show that Defendants deprived him of a right, privilege or immunity secured by the Constitution or Federal law and that in doing so Defendants acted under color of state law.  Chiles v. Crooks, 708 F. Supp. 127, 129 (D.S.C. 1989); Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977).  The Eighth Amendment is violated when Plaintiff shows he is incarcerated under conditions posing substantial risk of serious harm, and that Defendants were deliberately indifferent to Plaintiff's health and safety.  Farmer v. Brennan, 511 U.S. 825 (1994).

Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985).  A Defendant acts recklessly by disregarding a substantial risk of danger that is either known to the Defendant or which would be apparent to a reasonable person in the Defendant's position.  Id.  The test is a subjective one.  Farmer v. Brennan, 511 U.S. 825 (1994). Nevertheless, mere negligence does not violate the Eighth Amendment.  Estelle, supra, at 106.

Deliberate indifference to an inmate's serious illness or injury is actionable under 42 U.S.C. §1983 as constituting cruel and unusual punishment contravening the Eighth

Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Unless Plaintiff's medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, Plaintiff may not prevail. Estelle, supra, at 104.

In determining whether prison officials are deliberately indifferent to a prisoner's serious medical needs, the court may generally rely on medical records concerning examination and treatment of the prisoner. Bennett v. Reed, 534 F. Supp. 83, 87 (E.D.N.C. 1981), aff'd 676 F.2d 690 (4th Cir. 1982).

Deliberate indifference in the face of pervasive risk of harm or deliberate indifference or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. Pressly v. Hutto, 816 F.2d 977 (4th Cir. 1987). Deliberate indifference on the part of prison officials, required to be shown to establish an Eighth Amendment violation arising out of failure to prevent harm, requires more than ordinary lack of due care for a prisoner's interests or safety. Farmer v. Brennan, 511 U.S. 825 (1994).

A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement, unless the official knows of and disregards an excessive risk to the inmate's health and safety. The official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and the official must also draw that inference. Id. A prison official's failure to alleviate a significant risk that he should have perceived, but did not, while no cause for commendation, does not constitute infliction of punishment for Eighth Amendment

purposes.  Id.  A prisoner claiming that prison officials violated the Eighth Amendment duty to protect him against harm need not show that an official acted or failed to act believing that harm actually would befall an inmate.  It is sufficient that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.  Id.

Furthermore, it is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. Whitley v. Albers, 475 U.S. 312, 320–21 (1986); *see also* Wilkins v. Gaddy, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" Wilkins, 559 U.S. at 37 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Whitley, 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment

where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

The Supreme Court has directed courts to balance several factors in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Whitley, 475 U.S. at 321.

Because most prison officials and administrators are not trained medical personnel, they are entitled to rely on the opinions, judgment and expertise of prison medical personnel concerning the course of treatment which the medical personnel deemed medically necessary and appropriate for an inmate.  See Shakka, 71 F.3d at 167 (officials entitled to rely on judgment of medical personnel); see also Miltier, 896 F.2d at 854 (officials entitled to rely on expertise of medical personnel).

<u>DISCUSSION</u>

Plaintiff has not produced any evidence to support his allegations that Defendant Officer Vanderlinden and Defendant Sgt. Brown used excessive force, or any force, on him on October 14, 2017, outside the Broad River medical office.

11

In his Affidavit (Exhibit C), Defendant Officer Vanderlinden states that on October 14, 2017, he did not assault or use any type of force on Plaintiff outside the Broad River medical office, and he did not deny Plaintiff medical care. He does not recall talking to, seeing or interacting with Plaintiff in any way outside the Broad River medical office. Defendant Sgt. Brown also states in his Affidavit (Exhibit D) that on October 14, 2017, he did not assault or use any type of force on Plaintiff outside the Broad River medical office, and he did not deny Plaintiff medical care. He also does not recall talking to, seeing or interacting with Plaintiff in any way outside the Broad River medical office.

Defendant Officer Vanderlinden and Defendant Sgt. Brown further state in their Affidavits that they cannot find any documentation, including an incident report and/or MIN, that references any incident or assault or use of force regarding Plaintiff outside the Broad River medical office on October 14, 2017. They did not prepare an incident report or MIN, because they did not use any type of force on Plaintiff outside the Broad River medical office on October 14, 2017.

In addition, Defendant Capt. Jones states in her Affidavit (Exhibit E) that during her shift on October 14, 2017, she was not involved in any type of incident regarding Plaintiff outside the Broad River medical office or outside the operations entrance. She does not recall talking to, seeing or interacting with Plaintiff in any way outside the Broad River medical office or outside the operations entrance, and she does not recall talking to, seeing or interacting in any way with Defendant Officer Vanderlinden, Defendant Sgt. Brown or any other officers, regarding any type of incident with Plaintiff. She did not deny Plaintiff medical care on October 14, 2017. She further states in her Affidavit that she

cannot find any documentation, including an incident report and/or MIN, that references any incident or assault or use of force regarding Plaintiff outside the Broad River medical office on October 14, 2017, or that references any interaction she may have had with Plaintiff outside the operations entrance.

Plaintiff also claims that his alleged assault was never investigated. Angela Hardin is the Administrative Manager in the Office of the Deputy Director for Police Services. In her Affidavit (Exhibit A), Ms. Hardin states that Plaintiff submitted a Request to Staff (Exhibit A-1) and a Kiosk request (Exhibit A-2), in which he requested an investigation into his alleged assault. Interestingly, in these requests, Plaintiff states that only Defendant Sgt. Brown assaulted him.

The Police Services investigator did not find any documentation regarding this alleged incident, there was no medical encounter for Plaintiff on October 14, 2017, and when Plaintiff presented to the medical office on October 17, 2017, the medical encounter note shows that he did not mention the alleged assault or complain about any injuries he had from the alleged assault (Exhibit A-3). Because there was no evidence of an assault on Plaintiff on October 14, 2017, a formal investigation was not opened.

Plaintiff further claims that on October 14, 2017, between 10 am and 5 pm, he went to the Broad River medical office with other diabetic inmates, because he needed to have a finger stick blood sugar check, a blood pressure check and an insulin shot, that he was assaulted outside the medical office, and that he was denied medical care on that date and on October 15, 16 and 17, 2017.  Plaintiff alleges that due to the delays, denials and interference with the recommended treatments and medications for post-surgery

heart ablation surgery, he suffered numerous injuries and damages.

In her Affidavit (Exhibit B), Nurse Werre summarizes Plaintiff's medical care starting with his transport to Palmetto Health Richland on October 2, 2017, through October 17, 2017 (Exhibit B-1 – medical records).

October 14, 2017 was a Saturday. The Broad River medical office does not have sick call on Saturdays or Sundays - - on those days, the medical office only sees medical emergencies and inmates with chronic medical problems requiring blood pressure checks, finger stick blood sugar checks, insulin shots, dressing changes, etc., which usually require an order to report (OTR). These types of checks and shots are done between 5 am and 7 am and between 3 pm and 5 pm.

Plaintiff is a Type-2 diabetic. Because he does <u>not</u> take insulin and is <u>not</u> given insulin shots at the SCDC, Plaintiff did not need to come to medical for an insulin shot on October 14, 2017.  Plaintiff takes Metformin for his diabetes. He keeps Metformin and his other medications "on his person" to take daily.

Because Nurse Werre did not issue OTRs for Plaintiff's medications, his blood pressure checks, and his finger stick blood sugar checks, until October 19, 2017, Plaintiff did not have an OTR to report to the Broad River medical office on Saturday, October 14, 2017. He also did not have an OTR to pick-up his "heart medication" and other medications on October 15, 16 or 17, 2017.

When Plaintiff was examined in the Broad River medical office on October 17, 2017 (3 days after the alleged assault), he did not mention the alleged assault on October 14, 2017, and he did not complain about and/or did not appear to have any of the injuries and

14

damages he alleges in his Complaint. According to his medical records, Plaintiff has not complained about or been found to have loss of sensation in his left hand, the inability to grip objects with this fingers, a black eye, a bruised and painful swollen nose, pain to his shoulder, problems swallowing his food, constant pain to his lower spinal area, pain in his rib cage and stomach, and chronic pain in his shoulder, back, neck and ribs, which affect his walking, standing and sitting. Clearly, Plaintiff was not assaulted by Defendant Officer Vanderlinden and Defendant Sgt. Brown on October 14, 2017, as he describes in the Complaint, and therefore, none of the Defendants needed to get Plaintiff medical care for his alleged injuries and damages. Plaintiff does not allege any of the other Defendants assaulted him.

Furthermore, diabetic inmates report to the medical office between 5 am and 7 am and between 3 pm and 5 pm. Plaintiff states he went to the Broad River medical office on October 14, 2017, between 10 am and 5 pm with other diabetic inmates. Because Plaintiff did not go to the medical office during the 5 am to 7 am period, that means he allegedly went between 3 pm and 5 pm. In his Affidavit (Exhibit C), Defendant Officer Vanderlinden states his time sheets show that on October 14, 2017 (Saturday), he worked at Broad River from 6 am until 12.45 pm. Therefore, Defendant Officer Vanderlinden was not at the Broad River prison between 3 pm and 5 pm to assault Plaintiff, when Plaintiff allegedly was at the medical office with other diabetic inmates. It follows that if Defendant Officer Vanderlinden did not assault Plaintiff, then Defendant Sgt. Brown could not have participated with Defendant Officer Vanderlinden in assaulting Plaintiff as described in the Complaint.

Finally, Plaintiff claims he was denied procedural due process regarding a disciplinary hearing; however, Plaintiff does not allege that any of the Defendants were involved in the disciplinary hearing.  When a SCDC health care administrator received a report from Palmetto Health Richland that Plaintiff tested positive for amphetamines (meth) and marijuana, he wrote an Incident Report and charged Plaintiff with "trafficking, use, and/or possession of narcotics, marijuana, or unauthorized drugs, including prescription drugs, inhalants, intoxicants and synthetics" (Exhibit F – Incident Report).  At a disciplinary hearing on November 7, 2017, Plaintiff was convicted (Exhibit F – Disciplinary Report and Hearing Record). Plaintiff does not explain how he could have overcome irrefutable lab evidence of drug use.

Because the evidence shows that Defendant Officer Vanderlinden and Defendant Sgt. Brown did not use any force on Plaintiff on October 14, 2017, and therefore, did not injure or damage Plaintiff, they do not have to argue that force "was applied in a good-faith effort to maintain discipline" and was not used "maliciously and sadistically to cause harm". If Plaintiff was not assaulted, and because during Plaintiff's visit to the medical office on October 17, 2017, he did not complain about, or show evidence of, any injuries or damages from the alleged assault, all the Defendants did not deny Plaintiff medical care.

Accordingly, Plaintiff fails to prove that Defendant Officer Vanderlinden and Defendant Sgt. Brown used excessive force, or even any force, on him on October 14, 2017, and fails to prove that all Defendants were deliberately indifferent to his health or safety.  Therefore, Plaintiff fails to state a claim pursuant to the Eighth Amendment.

**III.    PLAINTIFF'S ALLEGATIONS THAT CERTAIN DEFENDANTS FAILED TO PROCESS AND/OR DENIED HIS GRIEVANCES AND FAILED TO RESPOND TO HIS REQUESTS TO STAFF MUST FAIL, BECAUSE THE CONSTITUTION DOES NOT CREATE AN ENTITLEMENT TO A GRIEVANCE OR REQUEST TO STAFF PROCEDURE.**

<u>LAW</u>

The Constitution creates no entitlement to a grievance procedure or access to any such procedure voluntarily established by a State.  Because a State grievance procedure does not confer any substantive constitutional right upon prison inmates, a prison official's failure to comply with the State's grievance procedure is not actionable under §1983.  <u>Flick v. Alba</u>, 932 F.2d 728 (8th Cir. 1991); <u>Mann v. Adams</u>, 855 F.2d 639 (9th Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 231 (1988).  <u>See also</u> <u>Adams v. Rice</u>, 40 F.3d 72 (4th Cir. 1994).

<u>DISCUSSION</u>

Plaintiff alleges that he sent Requests to Staff to Defendants A/W Stephan, Capt. Young, Warden Bush, and Major Ocean, regarding the alleged assault, denial of medical care and the disciplinary hearing, and claims he did not get any response.

Plaintiff filed a grievance about the assault, but it was returned, because he did not attempt informal resolution as required by the SCDC policy (this grievance is attached to the Complaint). Plaintiff filed a grievance about his disciplinary hearing (this grievance is attached to the Complaint).  Defendant A/W Stephan responded to this grievance.

Attached to the Complaint are several "home-made" Request to Staff forms that appear to have been created by Plaintiff to support his Complaint. There is no evidence these Requests were submitted to, and received by, any of the Defendants. However,

17

Plaintiff's proper Request to Staff form regarding his request for an investigation of his alleged assault (Exhibit A-1) resulted in an investigation that found no evidence of an assault. If Plaintiff actually sent these Requests to Staff to Defendants, and they had investigated his complaints, their responses would have been that there was no evidence the assault occurred and that there was no evidence he was injured or damaged. Even the "Declaration" Plaintiff attached to his Complaint to support his allegations is not signed by the "inmate".

Because a State grievance procedure and Request to Staff process do not confer any substantive constitutional right upon prison inmates, Defendants' alleged failure to comply with the State's grievance procedure or alleged failure to respond to Requests to Staff are not actionable under §1983. Therefore, Plaintiff fails to state a claim for violation of his Eighth Amendment rights and fails to demonstrate again that Defendants deprived him of any rights or privileges under the Constitution or Federal law.

**IV.    EVEN ASSUMING DEFENDANTS' CONDUCT IS DETERMINED TO BE UNCONSTITUTIONAL, THEY ARE ENTITLED TO QUALIFIED IMMUNITY FROM ALL LIABILITY.**

<u>LAW</u>

If Defendants' conduct is deemed unconstitutional, Defendants submit that they are entitled to qualified immunity under <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).  The Supreme Court in <u>Harlow</u> established the standard, which the Court is to follow in determining whether a defendant is protected by this immunity:

> Government officials performing discretionary functions generally are
> shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person should have known.

Reliance on the objective reasonableness of an official's conduct is measured by reference to clearly established law, and should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 116 S. Ct. 89 (1995).

In the case of S.P. v. City of Takoma Park, 134 F.3d 260 (4th Cir. 1998), the Court set forth the established law regarding the determination of qualified immunity for a governmental official. The Court noted that the Fourth Circuit requires the following three-step analysis: (1) identify the right allegedly violated, (2) decide whether that right was clearly established at the time of the alleged violation, and if so, (3) determine whether a reasonable person in the official's position would have known that his or her actions violated that right. Id.; see also Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996); Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). "If the right was not clearly established at the relevant time or if a reasonable officer might not have known that his or

her conduct violated that right, the officer is entitled to immunity." <u>Smith v. Reddy</u>, 101 F.3d at 355.

The Fourth Circuit explained the determination of whether the right is clearly established by stating that:

> the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

<u>Taylor v. Waters</u>, 81 F.3d 429, 434 (4th Cir. 1996) (citations omitted).  The official must realize that under the circumstances and the information known to him at the time, his actions will violate the constitutional rights about which the individual is now complaining.

<u>DISCUSSION</u>

The evidence produced by Defendants shows that they did not violate any constitutional or statutory rights of Plaintiff, whether "clearly established" or not, that their actions were reasonable, and that such reasonableness warrants the granting of qualified immunity on the claims presented by Plaintiff. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

Therefore, even if the Court finds that Defendants violated Plaintiff's constitutional rights, Defendants submit that they are entitled to qualified immunity in that they acted in an objectively reasonable manner in all actions involving Plaintiff considering "clearly established statutory or constitutional rights of which a reasonable person should have known."

## CONCLUSION

Based upon Plaintiff's Complaint, the Affidavits and documents submitted by Defendants, Plaintiff's failure to produce evidence to support his allegations, and the foregoing discussion, Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss Plaintiff's causes of action with prejudice.


<div style="margin-left: 40%;">

s/James E. Parham, Jr._____
James E. Parham, Jr.
Federal I.D. #2969
    Attorney for Defendants,
    Warden Dennis Bush, Sgt.
    Brown, Capt. Jones, Ofc.
    Vanderlinden, Capt. Young,
    AW Stephan and Major Ocean
Post Office Box 1576
Irmo, South Carolina 29063
803-749-8555
jparham@jparhamlaw.com

</div>

June 24, 2019

CERTIFICATE OF SERVICE

I, James E. Parham, Jr., do hereby certify that on the 24th day of June 2019, I mailed a copy of the foregoing Memorandum in Support of Motion for Summary Judgment on Behalf of Defendants, Warden Dennis Bush, Sgt. Brown, Capt. Jones, Ofc. Vanderlinden, Capt. Young, AW Stephan and Major Ocean, by depositing a copy of the same in the United States Post Office at Columbia, South Carolina, with proper postage affixed addressed to the following:

John F. Oglesby #194567, Pro Se
McCormick Correctional Institution
386 Redemption Way
McCormick, South Carolina 29899


s/James E. Parham, Jr._____
James E. Parham, Jr.